```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ALLEN RIDDICK,

                Plaintiff,

vs.                                Case No. 2:09-cv-465-FtM-29SPC

GEORGE SHELDON Secretary; THE GEO GROUP, INC. Facility Contractor; TIMOTHY BUDZ Executive Director, GEO; GEORGE EMANOLIDIS Ph.D. Assistant Clinical Director; B.L. MASONY Facility Attorney,

                Defendants.
_____

## **ORDER OF DISMISSAL**

### I.

This matter comes before the Court upon review of the file. Plaintiff, a civil detainee at the Florida Civil Commitment Center ("FCCC"), initiated this action by filing a Civil Rights Complaint Form (Doc. #1, Complaint) on July 20, 2009. Plaintiff attaches to his Complaint copies of the following documents: FCCC Resident Grievance Forms dated February 12, 2008, February 14, 2008, February 15, 2008, February 18, 2008, February 25, 2008, February 28, 2008, March 4, 2008, March 7, 2008, March 16, 2008, March 21, 2008, March 24, 2008, April 2, 2008, April 21, 2008, May 24, 2008, June 30, 2008, and July 19, 2008 (Doc. #1-2 at 1-13); copies of five photographs depicting Plaintiff's injuries (Doc. #1-2 at 14-18); and a copy of a Physical and Mental Health Nursing Assessment concerning Plaintiff dated February 20, 2008 (Doc. #1-2 at 19).

Plaintiff seeks to proceed *in forma pauperis* in this action. See Affidavit of Indigence (Doc. #2).

Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights by showing deliberate indifference to "a serious medical need." Complaint at 3. The facts in support of Plaintiff's claim are as follows.

Plaintiff suffers from seizures and has previously suffered a broken neck, which requires Plaintiff to be assigned to a low bunk. Id. at 4, ¶7. On January 29, 2008, Defendant Emanolidis moved Plaintiff from Fox Dorm to Delta Dorm. Id. at ¶8. Plaintiff's roommate in the Delta Dorm was also assigned to a low bunk. Id. Plaintiff went to the office in the Delta Dorm and complained that he had a low bunk pass, and was advised that his low bunk pass had expired. Id. at ¶9. Plaintiff had to "wait several days to see the doctor" to get his pass renewed and was required to "get up and down from the top bunk" with no ladder or chair. Id.

Before Plaintiff received his low bunk pass, he was assigned a new roommate Jose Cowley, who already had a low bunk pass. Id. at ¶10. Plaintiff received a low bunk pass on February 10, 2008, and began to write grievances on February 12, 14, 15, and 18, complaining that he was not being moved to a low bunk, despite having been issued a low bunk pass. Id. at ¶11, Doc. #1-2 at 1-4. On February 20, 2008, Plaintiff went to the FCCC's medical department and spoke with Ms. Peterson about the fact that he had not been moved to a low bunk, despite being issued a low bunk pass

on February 10, 2008. Id. at ¶12. Ms. Peterson told Plaintiff that "because of the hour" of the day, she would try to have Plaintiff moved the next day. Id. at ¶13.

After Plaintiff returned to his room, "[t]he tension that developed" between Plaintiff and resident Cowley "exploded" and Cowley "came from behind Plaintiff, cutting Plaintiff from behind with a sharp object" resulting in Plaintiff receiving multiple lacerations to his neck, back, face and chest. Id. at ¶14. Plaintiff was taken to medical and his "cuts" were treated. Id. at ¶15. Resident Cowley was placed in confinement and subsequently taken to the DeSoto County Jail. Id.

Plaintiff contends that Defendants "deliberate indifference" "cause[d] Plaintiff's injures to be aggravated, but ultimately resulted in Plaintiff being physically assaulted." Id. at ¶16. As relief, Plaintiff seeks $50,000 in compensatory damages and requests that the Court "initiate an investigation" to determine whether "criminal charges would be appropriate." Id. at 6.

**II.**

Despite Plaintiff's non-prisoner status, before the Court grants Plaintiff *in forma pauperis* status and directs the U.S. Marshal to serve his Complaint on Defendants, the Court is required to review Plaintiff's Complaint to determine whether the complaint is frivolous, malicious or fails to state a claim.[1] See 28 U.S.C.

---

[1]The Court recognizes that certain portions of the Prison
(continued...)

§ 1915(e)(2)(B)(I)-(iii). In essence, § 1915(e)(2) is a screening process, to be applied *sua sponte* and at any time during the proceedings. The Court, nonetheless, must read Plaintiff's *pro se* allegations in a liberal fashion. <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160 (11th Cir. 2003).

A complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. <u>Neitzke v. Williams</u>, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. <u>Id.</u> at 325; <u>Mitchell v. Brown & Williamson Tobacco Corp.</u>, 294 F.3d 1309 (11th Cir. 2002); <u>Bilal v. Driver</u>, 251 F.3d 1346 (11th Cir. 2001). Additionally, § 1915 requires dismissal when the legal theories advanced are "indisputably meritless," <u>Nietzke</u>, 490 U.S. at 327; when the claims rely on factual allegations which are "clearly baseless," <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992); or, when it appears that the plaintiff has little or no chance of success. <u>Bilal</u>, 251 F.3d at 1349.

---

[1](...continued)
Litigation Reform Act are not applicable to Plaintiff due to his status as a civil detainee. <u>Troville v. Venz</u>, 303 F.3d 1256, 1260 (11th Cir. 2002). The United States Court of Appeals for the Eleventh Circuit previously found that a district court did not err by dismissing a Complaint filed by a civil detainee for failure to state a claim under the *in forma pauperis* statute, 28 U.S.C. Section 1915 (e)(2)(B). <u>Id.</u> at 1260. Other Courts have also found that section 1915(e)(2)(B) is not limited to prisoners, but applies to all persons proceeding *in forma pauperis*. See <u>Calhoun v. Stahl</u>, 254 F.3d 845 (9th Cir. 2001).

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

The Court recognizes that the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002). Instead, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). See also Lavender v. Kearney, 206 Fed. Appx. 860, 862 (11th Cir 2006). Indeed, the Court recognizes that residents at the FCCC are afforded a higher

standard of care than those who are criminally committed. See id. (wherein the Eleventh Circuit Court of Appeals held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Nonetheless, "the Eighth Amendment's deliberate indifference jurisprudence is applicable to the Fourteenth Amendment due process rights of pre-trial detainees." Id. at 863 n.2 (citing Purcell v. Toombs County, Ga., 400 F.3d 1213, 1319 (11th Cir. 2005)(other citations omitted)). Consequently, the Court examines cases addressing medical deliberate indifference claims under the Eight Amendment for guidance in evaluating Plaintiff's claims.

A pre-trial detainee alleging a constitutional deliberate indifference claim "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" Harper v. Lawrence County, Ala., ___ F.3d. ___, 2010 WL 21179 *4 (11th Cir. Jan. 6, 2010)(quoting Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008)(footnote omitted)). To establish "deliberate indifference" the plaintiff must establish that Defendants "(1) had sufficient knowledge of a risk of serious harm; (2) disregarded that risk; and, (3) acted with more than gross negligence." Harper at *4 (citations omitted). Further, the plaintiff must show that it was the "Defendant's conduct" that "caused [Plaintiff's] injuries." Id.

To establish "sufficient knowledge," a Defendant "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also draw the inference.'" Id. (quoting Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)). "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." Burnette, 533 F.3d at 1331.

Further, a plaintiff must allege that the Defendant disregarded the risk of serious harm to the plaintiff with conduct that rises beyond negligence. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001). "Deliberate indifference" can include "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." Taylor v. Adams, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (internal quotation omitted). Whether the delay was tolerable depends on the nature of the medical need and the reason for the delay. Farrow v. West, 320 F.3d 1235, 1247 (11th Cir. 2003). Further, the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Id.

A prison official's duty to protect inmates from violent attacks by other inmates also stems from the Eighth Amendment's proscription against cruel and unusual punishment. Farmer v.

Brennan, 511 U.S. 825, 833 (1994). However, not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To establish a failure-to-protect claim, the plaintiff similar to establishing a medical indifference claim, "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the governmental official acted with "deliberate indifference" to the inmate's health or safety. Id. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety" - that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A plaintiff alleging an Eighth Amendment violation need not show that officials believed that harm would actually occur "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Whether an official had "actual knowledge of a substantial risk" is a "question of fact, subject to demonstration in the ususal way, including inference from circumstantial evidence." Id. Evidence of past attacks which were "long-standing, pervasive, well-documented, or expressly noted by prison officials in the past" and where the circumstances suggest that the defendant was exposed to the information would be sufficient to show the defendant had actual knowledge. Id.

**III.**

Based upon a review of the Complaint and the attachments thereto, the Court finds that Plaintiff's Complaint fails to articulate a constitutional claim upon which relief can be granted. At the outset, Defendants George Sheldon, the GEO Group, Timothy Budz and B.L. Masony are not mentioned anywhere in the body of the Complaint. Instead, their names appear only on the cover sheet of the Complaint and under the section captioned "Parties." Further, Plaintiff has failed to allege any wrongful conduct taken by any of the named Defendants that was the proximate cause of the damages or injuries to Plaintiff. Plaintiff states that he was issued a low bunk pass due to his history of seizures and previous broken neck. Plaintiff did not sustain his injuries from sleeping on the top bunk. Instead, Plaintiff admits that his injuries were caused by the criminal acts of resident Cowley. Plaintiff also acknowledges that immediately after the attack he was treated by medical staff for his injuries and resident Cowley was placed in confinement.

Nowhere in the Complaint does Plaintiff allege, or even intimate, that he ever told any Defendant that he was in fear of resident Cowley or that the issue of the low bunk pass was causing tension between Plaintiff and his roommate. Indeed, the Complaint and the grievances submitted by Plaintiff to FCCC officials are completely devoid of any allegations from which of the Defendants could have inferred that resident Cowley might harm Plaintiff.

Consequently, the Court finds the Complaint is due to be dismissed pursuant to § 1915(e)(2).

ACCORDINGLY, it is hereby

**ORDERED**:

1.  The Complaint is **DISMISSED** without prejudice.

2.  The Clerk of the Court shall: (1) enter judgment dismissing this case without prejudice; (2) terminate any outstanding motions; and, (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___14th___ day of January, 2010.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record